UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

Henry H. Howe,

Plaintiff,

v.

Steven Gilpin, et al.,

Defendants.

**STATE DEFENDANTS' REPLY BRIEF
IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

Case No. 3:20-cv-00013

### INTRODUCTORY STATEMENT

Howe's response brief demonstrates that the legal theory of his suit depends upon the contention that law enforcement officers act in reckless disregard of the truth and violate the Fourth Amendment when they fail to investigate a confidential informant's (CI's) background to uncover facts that would not even be disclosed in a standard criminal background check.  Yet Howe does not cite a single case that suggests officers are even negligent for failing to conduct such a comprehensive investigation, let alone cases that hold a failure to dig that deep rises to the level of recklessness.  To defeat a qualified immunity defense, a plaintiff *must* identify controlling precedent that give officers notice their conduct violates a clearly established constitutional right.  Especially in the Fourth Amendment context, this obligation cannot be satisfied by citing legal principles at a high level of generality, but by citing *factually similar* cases.

Howe's response brief is devoid of factually similar cases that support his legal theory of recklessness.  Indeed, CI jurisprudence demonstrates the opposite is true: officers can satisfy their obligation to verify a CI's credibility by independently corroborating information the CI provides.  That was done here.  Howe does not dispute that it was done.  In addition, a judge signed Howe's arrest warrant based

almost exclusively upon Howe's own tape-recorded inculpatory statements – not upon information that depended on the CI's credibility – and thus Howe cannot show the CI's background was "clearly critical" to the determination of probable cause, even if the defendants had known about the information and omitted it from the warrant affidavit, which they did not.

Howe's case against the defendants fails both as a matter of fact and law.  For this reason and the others articulated below and in their initial summary judgment brief, State Defendants Gilpin and Kraft request that Howe's complaint against them be dismissed in its entirety.

## LAW AND ARGUMENT

I.  **Howe does not dispute the material facts that establish the State Defendants' right to summary judgment, nor directly respond to the State Defendants' legal arguments.**

To defeat summary judgment, Howe was required to "come forward with specific facts showing that there is a genuine issue for trial." Millard Gutter Co. v. Cont'l Cas. Co., 9 F. 4th 711, 713 (8th Cir. 2021) (internal quotation marks and citation omitted).  Howe's response brief failed to dispute key material facts set forth in the defendants' summary judgment filings.  He also fails to directly address or refute dispositive legal arguments that are based upon those undisputed facts.

First and foremost, many aspects of the information CI Anderson reported to the Grand Forks Narcotics Task Force (GFNTF) were independently corroborated. See ECF 87 at 5-7 (listing at least ten separate facts reported by CI Anderson that were independently corroborated).  Howe did not dispute this.  The record shows that members of the GFNTF met with CI Anderson face-to-face, and the information he provided was from first-hand knowledge.  Howe did not dispute this.  Information about the conspiracy to harm or discredit EB also came from sources entirely

independent of CI Anderson.  Id. at 3-4 (referring to recorded jailhouse calls between Lysengen and Haase discussing the need to "set up" EB).  Howe did not dispute these facts, nor does his response brief directly address or refute the legal argument that the "core question in assessing probable cause based upon information supplied by an informant is whether the *information* is reliable," United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993) (emphasis added), and that one manner of assessing the reliability is to independently corroborate the information.  See ECF 87 at 23-25 and cases cited therein.

Second, neither of the State Defendants were aware of the two incidents from CI Anderson's background (the Sarpy County, Nebraska and Becker County, Minnesota "murder for hire" plots which are central to Howe's legal theory of recklessness) at the time Glaze submitted her arrest warrant affidavit in January 2014.  See ECF 89 at ¶ 9; ECF 90 at ¶ 6.  Howe did not dispute this.  The two "murder for hire" plots were not part of a standard Triple I criminal history background report because the incidents did not themselves result in arrests or charges.  See ECF 83-1. Howe did not dispute this fact either.  Instead, he claims the defendants should have been aware of those incidents simply because CI Anderson's criminal history report included felony offenses "from Fergus Falls (Becker County) Minnesota, and Sarpy County, Nebraska[.]" ECF 83-2 at W-G 1549.  But Fergus Falls is not even in Becker County, it is in Ottertail County, and the 2004 theft by swindle/theft by false representation charge from Ottertail County that Whelan listed on her "Criminal History" document had absolutely nothing to do with the 2003 "murder for hire" incident from Becker County, which is not included on CI Anderson's Triple I report. See ECF 83-1 at W-G 1585-86; ECF 83-2 at W-G 1549.  Similarly, the two Sarpy County incidents Whelan listed on her "Criminal History" document involved "fugitive from justice" charges.  ECF 83-1 at W-G 1590-91; ECF 83-2 at W-G1549.

The Sarpy County "murder for hire" incident did not result in an arrest or charge and thus does not appear on CI Anderson's standard criminal background check.  See id.

The defendants could not have deliberately omitted information about CI Anderson's background from the arrest warrant affidavit when the undisputed facts show they did not know about the information.  Nor could the defendants have acted in reckless disregard of the truth when it is undisputed they did not know about the information.  Although recklessness may be inferred if an affiant omits facts from a warrant affidavit that are "clearly critical" to a finding of probable cause, United States v. Reivich, 793 F.2d 957, 961 (8th Cir. 1986), this presupposes "the affiant in fact entertained serious doubts as to the truth of [her] allegations." United States v. Williams, 737 F.2d 594, 602 (7th Cir. 1984) (internal quotation marks and citation omitted).  That is because "reckless disregard for the truth in the context of an alleged Fourth Amendment violation under Franks v. Delaware is the same as that in the context of an alleged First Amendment violation." Bruning v. Pixler, 949 F.2d 352, 357 (10th Cir. 1991).  Thus, the recklessness that might be inferred from omitting clearly critical facts "of course, assumes that the affiant was *aware* of such omitted facts." Id. at 357 n.4 (emphasis added).  The defendants had no reason to entertain serious doubts about CI Anderson's information where they had independently corroborated multiple aspects of his information, had discovered facts about the conspiracy from sources other than CI Anderson, and had an inculpatory tape-recording of Howe that did not depend at all upon CI Anderson's credibility.

Howe is essentially asking the Court to adopt an absolute requirement for an affiant to put *all* of a CI's background information in a warrant affidavit – background beyond that disclosed in a standard criminal background check and beyond that actually known by the affiant – or face liability for reckless disregard.  Such a rule would impose an impossible burden on law enforcement, and Howe cites no cases that

have ever adopted such a broad and unlimited rule.  In fact, courts have expressly declined to do so:

> We have held that recklessness may be inferred when the information was 'clearly critical' to a finding of probable cause. <u>DeLoach</u>, 922 F.2d at 622.  But we have done so in cases where *the affiant (or a police affiant's investigation teammates) had the omitted information at the time of writing the affidavit, as have the other courts that apply that standard*. <u>E.g., id.</u>; <u>Bruning</u>, 949 F.2d at 358; <u>Hale v. Fish</u>, 899 F.2d 390, 400 (5th Cir. 1990); <u>United States v. Reivich</u>, 793 F.2d 957, 961 (8th Cir. 1986). Because the relevant inquiry is whether the affiant entertained serious doubts at the time of making his statements, the investigator's lack of knowledge of the informant's criminal history distinguishes this case from those in which we have inferred recklessness. In fact, adopting Comer's position would create an absolute requirement that every officer look up and likely include in his affidavit the criminal history of every imprisoned informant, and we decline to create that rule here.

<u>United States v. Comer</u>, 565 F. App'x 729, 732 n.2 (10th Cir. 2014) (emphasis added); <u>see also</u> <u>United States v. Ellis</u>, No. CR 12-20093-01-KHV, 2017 WL 193158, at *9 (D. Kan. Jan. 18, 2017) (rejecting a reckless disregard claim alleging officers omitted information from a warrant affidavit that indicated marijuana field tests sometimes yield false positives, because the criminal defendant failed to show officers knew that information when they applied for the warrant).

Significantly, Howe was tape-recorded giving advice on the timing of an event that would prevent EB from testifying at trial against Lysengen.  The tape-recording demonstrates Howe fully understood the context of the conversation, because he confirmed he would help prevent EB's testimony from being used at trial by canceling Lysengen's preliminary hearing if the State called EB to testify at it.  Howe did not dispute the accuracy of the tape recording, nor did he point to anything false or inaccurate in the relevant portion of the arrest warrant affidavit that summarized the contents of the tape recording.  Instead, he merely argues the defendants' "interpretation of the 'wire' recording . . . is incorrect and unjustified."  ECF 102 at 25.

But a judge signed an arrest warrant based upon that information, and thus the defendants are entitled to qualified immunity even if their understanding of the tape-recording was mistaken.  See, e.g., Williams v. City of Alexander, Ark., 772 F.3d 1307, 1311 (8th Cir. 2014) ("When the alleged constitutional violation involves an arrest pursuant to a warrant, the fact that a neutral [judge] has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner.") (internal punctuation marks and citation omitted); see also McCabe v. Parker, 608 F.3d 1068, 1077-78 (8th Cir. 2010) (indicating the standard for arguable probable cause is whether an officer "had a mistaken but objectively reasonable belief [a plaintiff] had committed a criminal offense"); Vaughn v. Greene Cnty., Ark., 438 F.3d 845, 852 (8th Cir. 2006) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.").

Howe asserts the defendants knew that the facts regarding CI Anderson's background "would negate probable cause."  ECF 102 at 32.  That assertion is unsupported and inconsistent with the undisputed facts in this case, which show that it was Howe's own words caught on tape, and not CI Anderson's word, that formed the basis of probable cause.  Howe supports this claim with a long block quote from United States v. Lull, 824 F.3d 109 (4th Cir. 2016).  See id.  But Lull was a case where the affiant already *knew* "the informant was not reliable and [that the Sheriff's Office had] terminated him as a confidential informant" because he had stolen money from the Sheriff's Office, yet still "failed to disclose the informant's theft and subsequent arrest to the state court magistrate."  824 F.3d at 112-113.  Lull provides no support for Howe's complaint in this case, where it is undisputed that none of the defendants knew about CI Anderson's "murder for hire" plots but still failed to disclose them in a warrant affidavit.

Third, neither Kraft nor Gilpin signed Howe's arrest warrant affidavit.  Howe did not dispute this fact, nor does Howe's brief address or refute the legal argument that the Eighth Circuit has never extended Section 1983 liability for a warrant issued without probable cause to non-affiant defendants.  See ECF 87 at 21 (citing Cooper v. Martin, 634 F.3d 477, 480 (8th Cir. 2011)).

## II.   The State Defendants are entitled to qualified immunity on Howe's reckless disregard claim.

In addition to failing to dispute key material facts, or directly respond to dispositive legal arguments based on those facts, Howe's response brief does not directly address or refute the defense of qualified immunity.  Instead, Howe boldly asserts he is entitled to have a jury determine whether the defendants' actions "crossed the line to constitute reckless disregard for the truth."  ECF 102 at 35.  But the presence of probable cause is an issue of law for a court to decide, not a jury.  Duhe v. City of Little Rock, Ark., 902 F.3d 858, 862 (8th Cir. 2018).  Whether omitted information is "clearly critical" to a finding of probable cause is part of the probable cause/arguable probable cause analysis, and thus also an issue of law for a court.  Randle v. Smith, No. 4:18-cv-00452-KGB, 2021 WL 4392267, at *8-10 (E.D. Ark. Sept. 24, 2021) (noting that probable cause is a question for the court, and conducting an analysis of the "clearly critical" issue as one of law); Johnson v. Ball, No. 4:13CV586 TIA, 2015 WL 1061564, at *6-10 (E.D. Mo. Mar. 11, 2015) (same).  Finally, whether qualified immunity protects a defendant from suit is an issue of law for a court to decide, not a jury.  Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995).

Before Howe can ever get to a jury on his novel legal theory about the unlimited extent to which law enforcement officers must investigate a CI's criminal (and noncriminal) background, he must get past qualified immunity.  He can do this by demonstrating that "various courts have determined that certain factually similar

conduct is a constitutional violation." <u>Dixon v. Lowery</u>, 302 F.3d 857, 861-62 (8th Cir. 2002). Factual "specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" <u>Mullenix v. Luna</u>, 577 U.S. 7, 12 (2015) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 205 (2001)). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." <u>Kisela v. Hughes</u>, __ U.S. __, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks and citation omitted).

The undisputed facts of this case demonstrate that the defendants (1) appropriately vetted CI Anderson by independently corroborating the information he was providing, (2) met with CI Anderson face-to face, (3) had information about a conspiracy to harm EB wholly independent of CI Anderson, (4) had a tape-recording in Howe's own words inculpating himself in the conspiracy, (5) knew nothing about CI Anderson's past involvement in "murder for hire" plots when they presented a warrant affidavit to a judge, and (6) the judge signed the warrant. In addition, it is undisputed that the "murder for hire" plots were not a part of CI Anderson's reported criminal history.

Given all those undisputed facts, Howe's legal theory is distilled to the contention that law enforcement officers act in reckless disregard of the truth and violate the Fourth Amendment when they fail to investigate a CI's background to uncover facts that would not even be disclosed in a standard criminal background check. Before he can ever get to a jury on that question, Howe needs to identify factually similar cases that would have put a reasonable officer on notice that he was "plainly incompetent," <u>Kisela</u>, 138 S. Ct. at 1152, for not conducting such an in-depth investigation into a CI's noncriminal background even after having independently corroborated information the CI was providing. Of course, Howe failed to cite such

cases because they do not exist.  Instead, the caselaw demonstrates both that reckless disregard does not apply when an officer does not even know about information omitted from a warrant affidavit, and that officers can satisfy their obligation to vet a CI by independently corroborating information he provides.

## CONCLUSION

State Defendants Gilpin and Kraft essentially repeat the conclusion from their principal brief because nothing in Howe's response brief changes the outcome. Howe's claims are based upon the flawed legal premise that the defendants were obligated to dig deep into CI Anderson's criminal/noncriminal background notwithstanding the fact that they had independently corroborated many things CI Anderson reported.  But even more fundamentally, Howe's own words – caught on tape – established probable cause for his arrest wholly aside from CI Anderson's word/credibility.  Howe's complaint should be dismissed.

Dated this 2nd day of December, 2021.

State of North Dakota
Wayne Stenehjem
Attorney General

By:    /s/ James E. Nicolai
       James E. Nicolai
       Deputy Solicitor General
       State Bar ID No. 04789
       Office of Attorney General
       500 North 9th Street
       Bismarck, ND 58501-4509
       Telephone (701) 328-3640
       Facsimile (701) 328-4300
       Email jnicolai@nd.gov

Attorneys for State Defendants.