IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| Henry H. Howe,<br><br>　　　　　Plaintiff,<br><br>-vs-<br><br>Steven Gilpin, et al.<br><br>　　　　　Defendants. | Case No. 3:20-cv-00013<br><br>**DEFENDANTS DELICIA GLAZE AND BARBARA L. WHELAN'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

**[¶1]** Whelan and Glaze[1] submit this reply in support of their summary judgment motion. ECF 81 to 85-9 and ECF 95 to 95-3. Howe's response does not alter the conclusion dismissal is warranted because he failed to dispute the material facts and his minimal legal analysis actually supports Whelan and Glaze's motion. See ECF 102. Absent from Howe's response is any analysis as to why absolute prosecutorial immunity and absolute witness immunity do not warrant dismissal, or any mention of his malicious prosecution claim. Howe even failed to discuss qualified immunity, which is not surprising given existing precedent contradicts his argument.

## LAW AND ARGUMENT

**A.** **Dismissal is warranted based on absolute prosecutorial immunity, absolute witness immunity and that malicious prosecution is an unsustainable claim.**

**[¶2]** Howe does not address arguments advanced by Whelan and Glaze on absolute witness immunity and malicious prosecution is not sustainable under § 1983 or if sustainable the elements have not been met. Compare ECF 81-1, ¶¶ 45-49 and 80-89 with ECF 102. The failure to address these arguments is a waiver by Howe that summary judgment is warranted based on such arguments. Paskert v. Kemna-ASA Auto Plaza, Inc., 950 F.3d 535, 540 (8th Cir. 2020).

---

[1] Identifying abbreviations and defined terms used in Whelan and Glaze's opening brief are being used and incorporated herein.

**[¶3]** Howe made passing reference to absolute prosecutorial immunity, without legal analysis and by making misleading assertions. ECF 102, p. 22 and 31. First, Howe claims Whelan was involved in investigative activities because, as Howe contends, Whelan approved the January 24, 2014 wire recording of Howe. ECF 102, p. 31. This statement is misleading because the record reveals Whelan was contacted only because the recording potentially involved attorney-client privileged communication and Whelan correctly concluded the privilege did not apply. ECF 84-24 (Gilpin Depo) 47:15-53:13, ECF 84-23, ¶ 4. Howe also misleads the Court by claiming that during the criminal investigation Glaze regularly contacted Whelan. ECF 102, p. 22. Yet, Howe fails to alert the Court that Glaze testified her contacts with Whelan was only "from a prosecutor's standpoint." ECF 84-17 (Glaze Depo) 35:3-36:16. Yet, the record shows Whelan was not involved in the criminal investigation – whether to direct or by performing any investigation activities. ECF 76-1 (Whelan Depo) 105:20-106:1, 117:10-13; 118:10-120:8; ECF 84-17 (Glaze Depo) 34:7-36:12; 41:1-4. Indeed, when asked what investigative or administrative functions Whelan was engaged in that formed the basis of his claims, Howe testified it was that Whelan believed information without personally investigating it – thus Howe's claims against Whelan are not because she performed investigative activities, but because Whelan <u>did not</u> perform any investigative activities, which is immunized by absolute prosecutorial immunity. ECF 84-1 (Howe Depo) 68:8-80:13; <u>Dick v. Watonwan Cty.</u>, 551 F.Supp. 983, 992 (D. Minn. 1982).

B. **<u>Qualified Immunity Warrants Dismissal.</u>**

**[¶4]** Howe was required to prove a constitutional right violation[2] and that the right was clearly established. <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001); <u>Hess v. Ables</u>, 714 F.3d 1048, 1051

---

[2] Due to page limits, Whelan and Glaze rely upon their opening brief there is no Fourth Amendment because probable cause of some crime did exist. ECF 81-1, ¶¶54-79.

(8th Cir. 2013) ("plaintiff bears the burden of proving that the law was clearly established").  Howe was required to provide existing precedent, in light of the specific context of this case, establishing the contours of the constitutional right is "so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  City of Tahlequah, Oklahoma v. Bond, __ U.S. __, 2021 WL 4822664, at *2 (2021).  Existing precedent must place the constitutional question beyond debate and the inquiry is "undertaken in light of the specific context of this case, not as a broad general proposition."  Rivas-Villegas v. Cortesluna, __ U.S. __, 2021 WL 4822662, at *2 (2021).  Specificity is especially important where, like here, claims are under the Fourth Amendment.  Id.  Howe failed to meet his burden as he cited no such existing precedent.

[¶5]   Howe's entire argument is boiled down to this single premise – there is a mandatory duty for officers to conduct an exhaustive criminal background check on all confidential informants to establish their credibility and reliability, and since, as Howe claims, such an exhaustive background check was not conducted,[3] the Arrest Warrant Affidavit manifested a reckless disregard for the truth by not including Anderson's prior unknown out-of-state murder for hire reports. ECF 102.  Yet, Howe ignores the following material facts, none of which are disputed:

- ➢ The Arrest Warrant Affidavit accurately memorialized the evidence GFNTF obtained, gathered, reported, heard or knew.  See ECF 81-1, ¶¶ 5-15, 18-21 and 25; ECF 84-10; See also ECF 84-1 (Howe Depo) 150:5-12 and 155:9-156:5 (Howe testifying he was unable to identify information, truthful or otherwise, that was omitted).

- ➢ The Arrest Warrant Affidavit accurately memorialized statements Howe made at the January 24, 2014 wire-recorded meeting advising that if EB, a star witness in the Lysengen Criminal Case, would disappear it would prove helpful and the timing of the disappearance to avoid raising suspicion.  See ECF 81-1, ¶¶ 18-20 and 25; ECF 84-10 at ¶ 13.

---

[3]  In yet another misleading statement, Howe implies that since Glaze did not see a background check report in files she reviewed to prepare for her deposition, that no background check was done. ECF 102, p. 15.  Howe's implication is misleading because the record shows – which Howe does not advise the Court of – that a criminal history and background check of Anderson was completed. ECF 84-17 (Glaze Depo) 52:21-58:16; ECF 84-24 (Gilpin Depo) 63:4-77:14.

- ➢ Anderson reported matters in face-to-face meetings with GFNTF, Anderson reported the information was from first-hand observations (including a map to EB's house and a photo of EB), and wore devices to audio record statements. See ECF 81-1, ¶¶ 5-14 and 18-21.

- ➢ GFNTF independently corroborated numerous items of information Anderson reported. See ECF 81-1, ¶¶ 10-14, 18-21 and 26.

- ➢ During the criminal investigation and when the criminal case was commenced, Whelan, Glaze, and others at GFNTF, had no knowledge of Anderson's prior out-of-state alleged murder for hire reports, and Howe has presented no evidence showing any of these parties had knowledge of such prior reports. See ECF 81-1, ¶ 28-29.

- ➢ During the criminal investigation, GFNTF independently gathered evidence, including (a) letters written by Lysengen to his step-son that contained ominous passages directed at EB, (b) audio recordings of jail phone calls and visits that were likewise directed at EB, (c) the January 24, 2014 audio recordings of Howe, and (d) the January 28, 2014 audio recording of Lysengen obtaining information from Smith about EB to arrange for the confrontational encounter with EB. See ECF 81-1, ¶¶ 12 and 18-21.

- ➢ GFNTF had concerns for EB's safety and advised she leave the area. See ECF 81-1, ¶ 15.

Viewed in light of these undisputed material facts, Howe's argument is meritless because it improperly places a mandatory duty upon officers to conduct exhaustive criminal background checks on all confidential informants to establish credibility and reliability (and expending limited resources while criminal activity is afoot) even though (a) the informant is known to law enforcement (not anonymous), (b) information from the informant is corroborated, (c) law enforcement have independently gathered evidence, and (d) the purported historical information is unknown and unreported in any criminal background check. As explained, in the context of the undisputed material facts and existing legal precedent, Howe's argument fails.

**[¶6]** At the outset, it is recognized that as part of the "totality of circumstances" probable cause analysis, the veracity, credibility and reliability of an informant's statements are relevant considerations. United States v. Robertson, 39 F.3d 891, 893 (8th Cir. 1994). However, contrary to Howe's assertion, the law does not impose a mandatory duty upon law enforcement to conduct an exhaustive background check to establish an informant's credibility and reliability. Rather, the

existing precedent recognizes an informant's credibility and reliability can be established several ways, including: (a) through face-to-face meetings with the informant (b) the information from the informant based on first-hand observations and (c) independent corroboration of the information, even innocent details, received from the informant.  United States v. Keys, 721 F.3d 512, 518 (8th Cir. 2013); United States v. Buchanan, 574 F.3d 554, 562 (8th Cir. 2009); Robertson, 39 F.3d at 893; United States v. Sinnawi, 2020 WL 625287, at *3 (D.N.D. 2020); see also Navarette v. California, 572 U.S. 393, 398 and 400 (informants that tell truth about some things more likely to tell truth on others and knowing informant's identity bolsters credibility).  In fact, the case of United States v. Mays, 993 F.3d 607 (8th Cir. 2021), cited at page 33 of Howe's brief, contradicts his argument because in that case the Eighth Circuit found an "important" consideration in assessing an informant's credibility and reliability is knowing the informant's identity, and also concluding that corroborating information from the informant, even innocent details, can support a finding of probable cause.  Mays, 993 F.3d at 615.  Finally, existing precedent holds that when information from an informant has been sufficiently corroborated, there is no need to establish the informant's veracity (or whether the informant is telling the truth).  United States v. Quezada-Enriquez, 567 F.3d 1228, 1233 (10th Cir. 2009) ("when there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant"); United States v. Comer, 565 F. App'x 729, 733 and n.2 (10th Cir. 2014) (search not needed in every case since veracity and reliability can be established in a number of ways and rejecting absolute requirement officer look up and include criminal history of every informant).

**[¶7]** Here, it is undisputed Anderson had reported information in face-to-face meetings with Glaze and others at the GFNTF and Anderson reported that the information was from first-hand observations derived from meetings with Lysengen, Howe and others.  ECF 81-1, ¶¶ 5-14 and 18-

21. Anderson was not only involved in face-to-face meetings, but his credibility was further buttressed by wearing devices that recorded not only statements by others but also allowed GFNTF to hear Anderson's own words and in turn evaluate Anderson's credibility. Id. Furthermore, it is undisputed numerous items of information provided by Anderson were independently corroborated by GFNTF and the GFNTF independently obtained evidence during the criminal investigation. ECF 81-1, ¶¶ 10-15, 18-21 and 26. Given these undisputed material facts and the existing precedent, including the precedent Howe cited, Howe's argument is eviscerated. Indeed, in the context of the undisputed material facts, the existing legal precedent contradicts Howe's argument because such precedent supports the conclusion it was permissible and objectively reasonable to have concluded Anderson and the information he provided was reliable and credible. Mays, 993 F.3d at 615; Keys, 721 F.3d at 518; Buchanan, 574 F.3d at 562; Robertson, 39 F.3d at 893; Quezada-Enriquez, 567 F.3d at 1233; Sinnawi, 2020 WL 625287, at *3; See also Navarette, 572 U.S. at 398 and 400. Howe's own deposition testimony even negates his argument because he testified that when a party, including law enforcement, is able to independently corroborate information received from an informing party, it leads a party (including law enforcement) to believe the informing party is credible. ECF 84-1, (Howe Depo) 307:10-311:10. Thus, Howe's testimony aligns with the existing legal precedent that reliability and credibility can be established by corroborating information provided by an informant – which is what occurred in this case when GFNTF corroborated numerous items of information received from Anderson. Moreover, Howe has cited no precedent that such a duty or constitutional right is clearly established, despite this burden falling squarely upon Howe. ECF 102; City of Tahlequah, Oklahoma, ___ U.S. ___, 2021 WL 4822664, at *2; Hess, 714 F.3d at 1051.

**[¶8]** It also should not go unnoticed that Howe misleads the Court when he states "Anderson [provided] literally all purported inculpatory information about attorney Henry H. Howe in this case." ECF 102, p. 5, see also p. 15. Although Anderson did provide information and was the only confidential informant in the case, this statement is misleading because it ignores the cascade of evidence supporting a finding of probable cause (or at least arguable probable cause) that was gathered by GFNTF during the criminal investigation, including (a) jailhouse recordings involving Lysengen that implicated Howe, (b) jailhouse letters containing ominous messages directed at EB, (c) White's confrontation with EB, (d) the audio recording of Howe on January 24, 2014, (e) the audio recording on January 28, 2014 where information about EB was obtained to set up the confrontation encounter and (f) concerns for EB's safety. See ECF 81-1, ¶¶ 12-15, 18-21; ECF 84-10. Further, Howe's claim the defendants had a "bent" interpretation of the advice he gave on January 24, 2014, regarding the star witness in the Lysengen Criminal Case disappearing and the timing of the disappearance, is a red herring, at best, because Howe conceded the Arrest Warrant Affidavit accurately memorialized these statements. ECF 102, p. 25; ECF 84-1 (Howe Depo) 194:4-241:1, ECF 84-10, ¶ 13.

**[¶9]** Furthermore, Howe does not dispute Glaze, Whelan, and the other defendants had no knowledge of Anderson's prior out-of-state murder plot reports when the criminal investigation was pending or the prosecution was commenced. This is fatal because Howe must prove Glaze, the affiant, Whelan and the other defendants, believed the Arrest Warrant Affidavit manifested a reckless disregard for the truth, which requires they had knowledge of, but omitted, information on Anderson's prior out-of-state reports by Anderson. Morris, 563 F.3d at 403; Butler v. City of Detroit, Michigan, 936 F.3d 410, 419-20 (6th Cir. 2019) (there must be evidence the officer "knew of or possessed information that contradicted the sworn assertions"); Bruning v. Pixler, 949 F.2d

352, 357 and n.4 (10th Cir. 1991) (recklessness from omission of facts assumes the affiant was aware of the omitted facts); Sanders v. City of Rochester, New York, 360 F. Supp. 3d 152, 162 (W.D.N.Y. 2019).  Here, the Arrest Warrant Affidavit aligns with contemporaneously prepared reports and recordings, which is "strong evidence" they believed the Arrest Warrant Affidavit was accurate and no evidence to the contrary exists.  Morris, 563 F.3d at 403.

**[¶10]**  Howe seemingly concedes knowledge of omitted facts is required by his statement, after discussing Anderson's prior out-of-state murder plot reports, that the "defendants . . . failed to [] inform the judicial officer . . . of [these] facts regarding the credibility of [Anderson] that defendants knew would negate probable cause" and citing to the cases of United States v. Lull, 824 F.3d 109 (4th Cir. 2016) and United States v Jacobs, 986 F.2d 1231 (8th Cir. 1993).  ECF 102, p. 32.  This statement – that the defendants knew Anderson's prior out-of-state murder plot reports would negate probable cause – is necessarily a concession by Howe that knowledge of the omitted facts is required because it would be impossible to omit facts that would negate probable cause without actually knowing what the probable cause negating facts are – put another way, it is impossible to omit an unknown fact.  Further, a cursory review of the cases Howe cited shows there must be knowledge of the facts that are omitted.  In the Lull case, the officers "immediately determined that the informant was not reliable and terminated him as a confidential informant" when they witnessed the informant attempting to steal money that was to be used in a control drug buy, yet did not disclose in the affidavit they had determined the informant to be unreliable or the known attempted crime.  United States v. Lull, 824 F.3d 109, 112-13 (4th Cir. 2016).  The Jacobs case involved a use of drug sniffing dog for a suspicious package and the law enforcement officer knew but omitted from the affidavit the known fact that the dog's actions did not constitute an official drug alert and the dog handler was not sure the package contained drugs.  United States v.

Jacobs, 986 F.2d 1231, 1233 (8th Cir. 1993).  Thus, in both of the cases cited by Howe, the omitted facts were known.  In contrast, it is undisputed Glaze, Whelan and other defendants had no knowledge of Anderson's prior out-of-state murder plot reports during the investigation or when Howe's prosecution was commenced.  ECF 81-1, ¶¶28-29.  Later discovery of Anderson's prior out-of-state murder for hire reports does not impair the conclusion Anderson was credible and reliable or that probable cause, or at least arguable probable cause, existed.  Illinois v. Rodriguez, 497 U.S. 177, 184 (1990); Just v. City of St. Louis, Missouri, 7 F.4th 761, 768 (8th Cir. 2021); United States v. Demilia, 771 F.3d 1051, 1054 (8th Cir. 2014); Keys, 721 F.3d at 518; Sinnawi, 2020 WL 625287, at *3.

**[¶11]**  Howe suggested the March 2014 "Triple I" report on Anderson and Whelan's summary of such report, acquired after Howe was charged, reveals Anderson's prior out-of-state murder plot reports.  ECF 102, p. 8.  Howe's assertion is inaccurate because neither of Anderson's prior out-of-state murder plot reports show up on these reports.[4]  ECF 85-4 and 85-5.  Further, it is not being suggested Anderson was an impeccable individual because he did have a criminal record – but that is not unsurprising because confidential informants commonly are involved in criminal activity and not law-abiding citizens who would be readily identified and compromised.  See United States v. Reivich, 793 F.2d 957, 960 (8th Cir. 1986) (confidential informants "might not have qualified for an AAA rating on a Dun & Bradstreet credibility scale, not having been shown to be Certified Public Informants, [but they did have the] motivation to speak the truth (it being a reasonably safe assumption that self-preservation ranks higher than honor in a drug dealer's hierarchy of values)").  Anderson's involvement in criminal activities does not invalidate the extensive corroboration and

---

[4] Howe states felony offenses from Fergus Falls, MN were listed and identifies Fergus Falls as being in Becker County, MN when Fergus Falls is located on Otter Tail County, MN.

independently gathered evidence that supported a finding of credibility and reliability and probable cause or at least arguable probable cause.  See ECF 84-10 and 84-11.  Furthermore, the assertion Howe makes at page 34 of his brief, derived from Chuck Anderson, the investigator he hired in defense of the underlying criminal charges, that Anderson should have been vetted, not only conflicts with existing precedent on methods to establish an informant's reliability and credibility but is an improper and baseless opinion by a non-expert since Howe verified to the Court "he does not intend to offer expert testimony from any witness."  ECF 62.

**[¶12]**  Finally, Howe, without citing any authority, claims a jury question exists as to whether Whelan, Glaze and the other defendants acted negligently or in reckless disregard for the truth.  ECF 102, p. 35.  This is incorrect because "when the issue of probable cause arises in a damage suit and the facts are not disputed or are susceptible to only one reasonable inference, the question is one of law for the court."  Fleming v. Harris, 39 F.3d 905, 907 (8th Cir. 1994)

## CONCLUSION

**[¶13]**  For the foregoing reasons and those previously provided, Whelan and Glaze respectfully request the Court grant their motion and dismiss, in total and with prejudice, Howe's claims.

**[¶14]**  Dated this 2nd day of December, 2021.

       **PEARSON CHRISTENSEN, PLLP**

       /s/ Daniel L. Gaustad
       Daniel L. Gaustad (ND ID #05282)
       Joseph E. Quinn (ND ID #06538)
       24 North 4th Street
       Grand Forks, ND  58203
       Telephone/Fax:  701-775-0521/701-775-0524
       E-mail:  dan@grandforkslaw.com
       Attorneys for Defendants Delicia Glaze and Barbara L. Whelan