IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| Henry H. Howe,<br><br>　　　　　Plaintiff,<br><br>　-vs-<br><br>Steven Gilpin, et al.<br><br>　　　　　Defendants. | Case No. 3:20-cv-00013<br><br>**DEFENDANTS DELICIA GLAZE AND BARBARA L. WHELAN'S RESPONSE TO SUR-REPLY MEMORANDUM OF PLAINTIFF HENRY H. HOWE (ECF 111)** |

## INTRODUCTION

**[¶1]** Whelan and Glaze[1] submit this response to the Sur-Reply Memorandum as permitted by the Court pursuant to D.N.D. Civ. L. R. 7.1(c). ECF 111, 113. Howe's sur-reply, like his original response, does not alter the conclusion dismissal is warranted because Howe ignores the limited applicability of the cases relied upon in order to overstate the applicable law. See ECF 111.

## LAW AND ARGUMENT

### A. Howe ignores the undisputed material facts of this case.

**[¶2]** Howe's sur-reply begins with reliance on United States v. Tanguay, 787 F.3d 44 (1st Cir. 2015) for the proposition there was a mandatory duty to conduct an exhaustive background investigation of Anderson. However, Howe ignores the undisputed material facts of this case and misstates the law because an investigation of an informant, like Anderson, only arises in the very limited circumstance of when an officer has "serious doubts" about the credibility of the informant or the veracity of the allegations underlying the showing of probable cause. ECF 111, p. 2 (citing Tanguay, 787 F.3d at 46). The Tanguay decision is clear, any further inquiry is triggered only by the officer's "knowledge of an obvious and unexplored reason to doubt the truthfulness of the

---

[1] Identifying abbreviations and defined terms used in Whelan and Glaze's opening brief are being used and incorporated herein.

allegations" contained in the affidavit of probable cause. See Tanguay, 787 F.3d at 53. Howe has failed to present any evidence Glaze possessed knowledge of an obvious and unexplored reason to doubt the truthfulness of Anderson. See ECF 81-1, ¶¶ 5-14, 18-21, 54-79; ECF 108. Under the undisputed facts of this case, it was permissible and objectively reasonable to conclude Anderson and the information he provided was reliable and credible. United States v. Mays, 993 F.3d 607, 615 (8th Cir. 2021); United States v. Keys, 721 F.3d 512, 518 (8th Cir. 2013); United States v. Sinnawi, 2020 WL 625287, at *3 (D.N.D. 2020).

**[¶3]** Even a cursory review of Tanguay reveals it has limited application and no application to this case. In Tanguay, the informant "was known as a 'police groupie' who was 'quirky,' 'troubled' in his teen years, and had a history of suicidal ideation," but this information was omitted from the affidavit in support of a search warrant, along with a prior conviction of falsifying a prescription and a prior inconsistent statement. Tanguay, 787 F.3d at 47-48. Furthermore, no inquiry was made after another officer voiced concerns about the informant. Id. at 48. The officer had "reason to doubt the veracity of [the informant's] information. Id. at 53. In determining whether probable cause existed, the Tanguay court started with the finding the officer "understood full well [the informant's] credibility was at issue" but "did nothing." Id. at 52. Given probable cause depended entirely on the information provided by the informant, the Tanguay court determined enough red flags were raised to "create a duty of further inquiry." Id. at 53. In contrast to the facts of this case, Anderson's credibility was not at issue based upon the independent corroboration and the evidence gathered and known to the GFNTF. See ECF 81-1, ¶¶ 5-14, 18-21, 54-79; ECF 108. Moreover, while Anderson did provide information, unlike the informant in Tanguay case (where the case for probable cause depended entirely on the informant's information), there was a cascade of other evidence gathered to support probable cause. Compare

Tanguay, 787 F.3d at 53 with ECF 81-1, ¶¶ 12-15, 18-21; ECF 84-10; ECF 108, ¶ 8. The Tanguay decision does not support a mandatory duty of further inquiry when considering the undisputed material facts in this case.

**[¶4]** Furthermore, in a footnote, the Tanguay court contrasted three cases where no inquiry was mandated and in each, the "Franks challenge failed because the affiant had no reason to doubt the truthfulness of the allegations that undergirded the showing of probable cause," which was the case here. Tanguay, 787 F.3d at 53, fn. 4 (citing United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002); United States v. Castillo, 287 F.3d 21, 26 (1st Cir. 2002); United States v. Miller, 753 F.2d 1475, 1478 (9th Cir. 1985)). This is significant as these cases are factually on point. See Miller, 753 F.2d at 1478 ("It might have been prudent . . . to check on [informant's] background and criminal record, but their failure to do so is not reckless disregard" because the "agents knew of the charges for which [he] was being held, and they knew of his Oregon narcotics and firearms convictions," they "observed [his] demeanor and behavior during the interview" and "none of the officers, county or federal, was aware of the perjury conviction until the day the Franks hearing was held"). In sum, Howe's reliance on Tanguay is misplaced.

  **B.**  **Whelan and Glaze are entitled to qualified immunity as no genuine issue of material fact exists.**

**[¶5]** In making the argument Whelan and Glaze are not entitled to qualified immunity, Howe, for the first time in the sur-reply, discusses the two-prong inquiry district courts engage in to determine if a defendant is entitled to qualified immunity. See ECF 111, p. 6-7 (citing Cotton v. Stephens, 2020 WL 7632216, at *10 (D. Neb. 2020). Howe then argues the duty to investigate and conduct further inquiry was clearly established at the time of Howe's arrest but notes this alleged duty only is present when there is "'an obvious reason to doubt' the veracity or integrity of information supporting probable cause which had been conveyed . . . by an informant." Id. at

p. 7 (citing Chapman v. Finnegan, 950 F. Supp.2d 285 (D. Mass. 2013); Abubardar v. Gross, ___ F. Supp. 3d ___, 2021 WL 2322834 (D. Mass. 2021)).  Yet, Howe does not discuss the evidence to establish the "obvious reason to doubt" the veracity of Anderson – because none exists given the corroboration of Anderson's information.  ECF 81-1, ¶¶ 5-14, 18-21, 54-79; ECF 108; Mays, 993 F.3d at 615; Keys, 721 F.3d at 518; Sinnawi, 2020 WL 625287, at *3.

**[¶6]**   The case relied on by Howe recognizes "[p]robable cause determinations are preliminary and tentative" and do not give rise to "a standing obligation to investigate."  Chapman, 950 F. Supp. 2d at 296.  Rather, as noted by the First Circuit, "a duty to investigate may arise in certain special circumstances," in which "police officers effected an arrest by relying upon an incoherent individual's allegations without further investigation."  Id. (citing B.C.R. Transport Co. v. Fontaine, 727 F.2d 7 (1st Cir.1984)).  It was only in the extreme situation—reliance on an incoherent informant—that the Chapman court, a case cited by Howe, noted a duty to investigate may arise.  Id.  Those extreme facts do not exist in this case.

**[¶7]**   Howe next asserts summary judgment must be denied because "a jury's finding of fact made [*sic*] certainly be pivotal in the determination of whether probable cause exists in a particular case," relying on Manifase v. City of Providence, 2021 WL 5040254 (D. R.I. 2021), a case that likewise is inapplicable due to the stark factual differences with this case.  ECF 111, p. 8.  In fact, in determining there were genuine issues of material fact, the district court in Manifase noted the affidavit submitted in support of the arrest warrant and the officer's interrogatories "differed in several respects," it was different than the original victim statement, and included "embellished inferences as fact."  Id. at *2-3.  The court in the Manifase case also found affidavit further "included an affirmatively inaccurate statement of the video's content and, at the same time, failed to include a truthful description of the video's 'grainy' quality."  Id. at *6.  Based on these

inconsistencies and the inclusion of inaccurate statements, the district court "defer[red] judgment on the issue of qualified immunity." Id. at *7. As identified in Whelan and Glaze's previous reply, Howe failed to identify genuine issues of material sufficient to warrant a denial of summary judgment based on qualified immunity. See ECF 108, ¶¶ 5-12. Moreover, it is undisputed the Arrest Warrant Affidavit accurately memorialized the evidence the GFNTF obtained, gathered, reported, heard or knew. See ECF 81-1, ¶¶ 5-15, 18-21, 25; ECF 84-10; ECF 84-1 (Howe's Depo) 150:5-12; 155:9-156:5.

[¶8]   In sum, by his sur-reply brief, Howe has still failed to meet his burden to provide existing precedent clearly establishing the contours of the constitutional right in light of the specific undisputed material facts of this case. See City of Tahlequah, Oklahoma v. Bond, __ U.S. __, 2021 WL 4822664, at *2 (2021); Rivas-Villegas v. Cortesluna, __ U.S. __, 2021 WL 4822662, at *2 (2021). Dismissal based on qualified immunity is warranted.

### C.     Defendants Barbara L. Whelan is entitled to absolute prosecutorial immunity.

[¶9]   Howe asserts Whelan stepped outside of her role as prosecutor by taking "investigative and administrative actions," and that "Whelan has failed to carry [her] burden" "showing she is entitled to 'absolute prosecutorial immunity.'" ECF 111, p. 8-9. Howe relies on the case of Meade v. Smith, 2020 WL 1180410 (N.D. Iowa 2020) to support this argument, however, the prosecutor in Meade engaged in extensive investigation for which he could not "explain how his investigation into Meade was intimately associated with the judicial phase of the criminal process, or advocacy on behalf of the government." See Meade, 2020 WL 1180410, at *9 (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976); Schenk v. Chavis, 461 F.3d 1043, 1046 (8th Cir. 2006)) (internal quotations and emphasis omitted).

[¶10]   In contrast, Whelan clearly explained why her actions entitled her to absolute prosecutorial immunity as the record shows Whelan was not involved in the criminal investigation. ECF 76-1

(Whelan Depo) 105:20-106:1, 117:10-13; 118:10-120:8; ECF 84-17 (Glaze Depo) 34:7-36:12; 41:1-4.  Whelan is entitled to absolute prosecutorial immunity for any claims of improper investigation before prosecution commences because "[n]ot all of an advocate's work is done in the courtroom" since "to properly try a case, [a prosecutor] must confer with witnesses, and conduct some of [their] own factual investigation."  Reasonover v. St. Louis Cty., Mo., 447 F.3d 569, 580 (8th Cir. 2006); see also Dick v. Watonwan Cty., 551 F.Supp. 983, 992 (D. Minn. 1982); Van Cleave v. City of Marysville, Kansas, 185 F.Supp.2d 1212, 1214-15 (D. Kan. 2002); see also Burns v. Reed, 500 U.S. 478, 486 (1991).  Indeed, Howe's claims against Whelan are not because she performed investigative activities, but because Whelan did not perform any investigative activities, which is immunized by absolute prosecutorial immunity.  ECF 84-1 (Howe Depo) 68:8-80:13; Dick v. Watonwan Cty., 551 F.Supp. 983, 992 (D. Minn. 1982).  In short, Whelan's actions were within her role as a prosecutor entitling her to absolute prosecutorial immunity.

## CONCLUSION

**[¶11]**  For the foregoing reasons and those previously provided, Whelan and Glaze respectfully request the Court grant their motion and dismiss, in total and with prejudice, Howe's claims.

**[¶12]**  Dated this 8th day of December, 2021.

> **PEARSON CHRISTENSEN, PLLP**
>
> /s/ Daniel L. Gaustad
> Daniel L. Gaustad (ND ID #05282)
> Joseph E. Quinn (ND ID #06538)
> 24 North 4th Street
> Grand Forks, ND  58203
> Telephone/Fax:  701-775-0521/701-775-0524
> E-mail:  dan@grandforkslaw.com
> Attorneys for Defendants Delicia Glaze and Barbara L. Whelan