IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Henry H. Howe,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>Steven Gilpin, Delicia Glaze, Scott Kraft, and Barbara L. Whelan,<br><br>　　　　　　　　　　Defendants. | Case No. 3:20-CV-00013 |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

[¶1]    THIS MATTER comes before the Court on two Motions for Summary Judgment filed by Defendants Delicia Glaze ("Glaze") and Barbara Whelan ("Whelan") and by Defendants Steven Gilpin ("Gilpin") and Scott Kraft ("Kraft") on October 1, 2021. Doc. Nos. 81, 86. The Plaintiff, Henry H. Howe ("Howe") filed a Response to both Motions on November 18, 2021. Doc. No. 102. Defendants Glaze and Whelan and Defendants Gilpin and Kraft both filed Replies on December 2, 2021. Doc. Nos. 107,108. Thereafter, Howe requested leave to file a Sur-Reply, which was Granted. Doc. Nos. 109, 110. A Sur-Reply was filed on December 6, 2021. Thereafter, Defendants Glaze and Whelan also requested leave to file additional filing, which was Granted. Doc. Nos. 112, 113. Defendants Glaze and Whelan filed a Response to the Sur-Reply on December 8, 2021. Doc. Nos. 114. For the reasons set forth below the Motions for Summary Judgment are **GRANTED**.

## INTRODUCTION

[¶2]    Howe commenced this action on January 29, 2020 alleging three causes of action. Doc. No. 1. Howe later amended his complaint on April 30, 2021 alleging three causes of action, all under 42 U.S.C. §1983: (1) Warrant Based Upon Deliberate Falsehood or Reckless Disregard for the Truth; (2) Warrant Not Supported by Probable Cause-Fourth Amendment; (3) and Malicious Prosecution-Fourth Amendment. Doc. No. 56. Defendant Gilpin was a Special Agent of the North Dakota Bureau of Criminal Investigation ("BCI") and member of the Grand Forks Narcotics Task Force ("GFNTF"). Defendant Glaze was a Deputy Sheriff of the Grand Forks County Sheriff's Department and member of GFNTF. Defendant Kraft was a Special Agent of BCI and a member of GFNTF. Defendant Whelan was the State's Attorney for Walsh County. Howe alleges Defendants Gilpin, Glaze, Kraft, and Whalen, in concert with the GFNTF developed false evidence that was incorporated into the Arrest Warrant Affidavit of Glaze with reckless or deliberately false testimony in violation of Howe's Fourth Amendment rights. Howe alleges the warrant was not supported by probable cause. Howe further alleges the Defendants caused his arrest and continued prosecution in the absence of probable cause. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

## STANDARD FOR SUMMARY JUDGMENT

[¶3]    The Court will grant summary judgment "if the movant shows. . . .there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is 'genuine' if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." Schilf v. Eli Lilly & Co., 687 F.3d 947, 948 (8th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the

suit.'" Dick v. Dickinson State Univ., 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting Anderson, 477 U.S. at 248). Courts must afford "the nonmoving party the benefit of all reasonable inferences which may be drawn without resorting to speculation." TCF Nat'l Bank v. Mkt. Intelligence, Inc., 812 F.3d 701, 707 (8th Cir. 2016) (quoting Johnson v. Securitas Sec. Servs. USA, Inc., 769 F.3d 605, 611 (8th Cir. 2014)). "At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial." Nunn v. Noodles & Co., 674 F.3d 910, 914 (8th Cir. 2012) (citing Anderson, 477 U.S. at 249). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

[¶4]    The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Diesel Machinery, Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). "A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party." Moore v. Philander Smith Coll., 25 F. Supp. 3d 1095, 1099 (E.D. Ark. 2014). If the movant demonstrates the absence of a genuine issue of material fact, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id.

[¶5]     The facts are viewed in the light most favorable to the Plaintiff, the non-movant, in a motion for summary judgment. Krosch v. JLG Indus., Inc., 590 F. Supp.2d 1169, 1173 (D.N.D. 2008). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 370, 380. (2007) "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id.

## FACTUAL BACKGROUND

[¶6]     The facts in this case center around the arrest and criminal charges against Howe. Howe had been engaged in the private practice of law, including criminal defense. The events leading to Howe's arrest spring from a criminal case against Paul Lysengen ("Lynsengen") who Howe represented. Doc. Nos. 102-26, 84-9.

[¶7]     On May 22, 2013, a Confidential informant ("CI"), named "EB" bought methamphetamine from Lysengen during a controlled buy at a residence in Warsaw, North Dakota, belonging to Lysengen and his son, Anthony Haase ("Haase"). Doc. No. 82-1. On May 24, 2013, officers executed a search warrant at the residence. Id. As a result, Lysengen was charged with nine felony charges and one misdemeanor. Id. Howe was Lysengen's attorney of record. Id. Haase was also charged. During incarceration, Haase and Lysengen would speak on jail calls. Id. Law enforcement reviewed the jail calls and found Lysengen informed Haase who the CI was. Id. On one of the calls, law enforcement noted Haase stated Howe advised him the CI needed to be "set-up." Id. Law enforcement noted these calls indicated Lysengen listened to the recording of the controlled buy, he identified EB as the informant, and he directed Haase to obtain "paperwork" from Howe to let others know EB was wearing a wire. Id.

[¶8]     On January 14, 2014, Special Agent Gilpin received a call from the Grand Forks County State's Attorney's Office. Id. A criminal defense attorney, David Ogren, advised Gilpin he received information the CI was in danger. Ogren represented an individual named Steve Anderson, who said he had information about individuals who described plans to harm or discredit EB. Id. Anderson told Ogren he believed Lysengen, an individual named Wesley Smith ("Smith"), and possibly others would hurt or kill EB. Id. Anderson provided Ogren a photo of EB and a handwritten map to her home from Lysengen. Id.; Doc. Nos. 85-6; 106.

[¶9]     Gilpin showed Special Agent Kraft and GFNTF Officer Glaze the photo and map to confirm they were accurate. Doc. No. 82-1. Kraft initially signed EB up as an informant and knew where EB resided. Kraft confirmed the location on the map and the photo. Id. Gilpin and Glaze met face-to-face with Ogren and Anderson that afternoon. Doc. No. 106. Anderson advised Gilpin and Glaze that Lysengen and Smith wanted EB dead so she could not appear at Lysengen's court appearances. Doc. No. 82-1. Smith was previously in a relationship with EB. Id. Anderson told Gilpin and Glaze there was a meeting on January 9, 2014 at his residence. Id.; Doc. No. 106. During this January 9 meeting, Lysengen produced audio CDs of the controlled purchase and discussed a plan to kill EB. Id. In particular, they planned to contact EB, entice her with a discussion of the sale of antiques and stated EB would "end up as fish bait." Id. At the end of the meeting, the group decided to have another meeting on January 24, when another friend would be back from selling methamphetamine in Arizona. Id. Anderson also noted Smith had gone to EB's home on January 12, 2014. Id. The Task Force corroborated this information by finding Smith and Lysengen knew each other, Anderson knew EB's name and her interest in antiques, the friend had been in Arizona selling methamphetamine, and confirmed with EB Smith had come to her house, among other things. Doc. No. 82-1.

[¶10]     GFNTF asked Anderson to act as a CI. Anderson completed BCI's cooperating individual agreement and personal history report. Doc. Nos. 84-26; 85-6. After, Anderson wore a body transmitter and met with Howe and Lysengen at Howe's office on January 24, 2024. Doc. No. 84-1. Because the meeting involved potential attorney-client privilege, Gilpin contacted Whelan who determined the privilege did not apply. Doc. No. 102-12. During the meeting, a hypothetical disappearance of EB was discussed.

> Anderson: I take it this shouldn't be happening like five days before he goes to trial.
>
> Howe: Well I, I, I think that that um it gives the state more to think about if they know that they are going through a trial and it's going to be a little bit miserable to go through a trial and what are they going to get out of it.
>
> Anderson: Yeah, without their star witness.
>
> Howe: You know if they, if they, yeah and that also looks suspicious you know if somebody
>
> Anderson: Yeah, if someone disappears five days before action, yeah.
>
> Howe: Yeah then they, then they tend to assume… they they start off with the assumption that it's not a coincidence
>
> Anderson: Yeah oh gee I don't understand that.

Doc. No. 106.

[¶11]   Later in the conversation Howe suggests EB will not show up to the preliminary hearing and further stated he would cancel it if she did show up. Id. Anderson had a subsequent conversation with Smith and Lysengen about plans to harm EB. Doc. No. 82-4. The plan was for Anderson to call EB to meet about antiques and he would then drug EB, get her body into his car and make it look like she died of asphyxiation. Id.

[¶12]   On January 30, 2014, Glaze submitted a lengthy, six-page, arrest warrant affidavit, discussing the original control buy from Lysengen. Doc. No. 84-10. Glaze noted Haase and

Lysengen had discussed handing out "paperwork" from Howe to their connections and trying to "set-up" EB. Id. Glaze stated:

> After receiving the report from [Anderson] on January 9, 2014, the GFNTF began utilizing a body transmitter and digital recorders on [Anderson]. Various forms of surveillance were conducted, corroborating that [Anderson] and Lysengen were often together. [Anderson] informed the GFNTF that he had recently attended meetings between Howe and Lysengen. [He] informed the GFNTF that he a discussion with Howe about making [EB] "go away." [Anderson] quoted Howe as saying, "It would be good if the bitch died or went away." [Anderson] said that Howe stated, "Then Paul Lysengen wouldn't be facing half the shit he's facing." … [Anderson] also attended another meeting at Howe's office. Present were [Anderson], Lysengen and Howe. At that meeting, Lysengen asked Howe what would happen if [EB] didn't show up for Court. Howe responded, "They wouldn't have a case." [Anderson] said, "Wouldn't it be easier to just set [EB] up?" Howe replied, "It would be better if she just didn't show up." Lysengen then stated to Howe, "If she shouldn't show up, then she won't show up for Court."

Id.

[¶13] Judge Richard Geiger signed an arrest warrant against Howe for the crime of conspiracy to commit murder in violation of N.D.C.C. § 12.1-06-04 and § 12.1-16-01(1)(a). Doc. No. 84-11. Howe was arrested on January 31. Doc. No. 82-9. Shortly thereafter, Howe was suspended from the practice of law. On April 24, 2014, the charge was amended to conspiracy to tamper with a witness and/or information in a criminal proceeding in violation of N.D.C.C. §§ 12.1-06-04 and 12.1-09-01. On May 8, 2014, Whelan filed a Motion to Dismiss the charge, which was granted. Doc. No. 83-4. Whelan stated she moved to dismiss the charge due to new information about Anderson. Specifically, information had come to light after March 27, 2014 that Anderson had reported to law enforcement in Nebraska and Minnesota of other purported murder-for-hire plots. Doc. Nos. 89, 90. Whelan expressly stated she still believed there was probable cause, but not enough for proof beyond a reasonable doubt. Doc. No. 83-5.

## ANALYSIS AND DISCUSSION

### I.   WARRANT BASED UPON DELIBERATE FALSEHOOD (FRANK'S VIOLATION)

[¶14]   Howe first alleges the warrant was based upon deliberate falsehood or reckless disregard for the truth. Howe claims the Defendants, "acting in concert with and within the Grand Forks Narcotics Task Force…developed and generated false 'evidence,' much of which was eventually incorporated into the Arrest Warrant Affidavit… violat[ing] plaintiff Henry Howe's Fourth Amendment constitutional rights to be free from-either or both- the reckless or deliberate provision of false testimony." Doc. No. 56.

[¶15]   "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271, 114 S. Ct. 807, 811, 127 L. Ed. 2d 114 (1994)(citing 18 U.S.C. § 1983). "A warrant based upon an affidavit containing 'deliberate falsehood' or 'reckless disregard for the truth' violates the Fourth Amendment. An official who causes such a deprivation is subject to § 1983 liability." Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir.1996) (quoting Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). "[T]he deliberate falsity or reckless disregard whose impeachment is permitted ... is only that of the affiant, not of any nongovernmental informant." Franks v. Delaware, 438 U.S. 154, 171, (1978). In other words, the question of deliberate falsehood is whether Glaze, as the affiant, intentionally made false statements or recklessly disregarded the truth. Howe has alleged no facts, nor does the record support any facts, that amount to a deliberate falsehood by Glaze being the basis for the warrant affidavit.

[¶16]   Howe largely relies "upon the prong of Franks that holds a warrant affidavit constitutionally infirm if it reflects a material and reckless disregard for the truth." Bagby, 98 F.3d at 1099. "This prong of Franks is governed by an objective standard that is quite amenable to

qualified immunity review—whether the warrant affidavit was so materially false that defendant manifested reckless disregard for the truth in submitting it." Id. "[A] warrant may not be collaterally attacked by a criminal defendant, the Supreme Court explained, if all the false and reckless portions of a warrant affidavit are corrected and the corrected affidavit still supports a finding of probable cause." Id.

[¶17] The statements in the warrant must be looked at as though Glaze herself recklessly disregarded the truth, not whether Anderson lied. Howe largely argues Anderson was an unreliable habitual liar as a CI and Whelan should have performed a more comprehensive criminal record check prior to charging Howe. Howe argues Whelan should have run a background check known as a Triple I report prior to charging him Howe. Doc. No 102. Whelan, however, testified she does not have access to the Triple I, prior to making the charging decision, only law enforcement did. Doc. No. 102-13. While Whelan may not have had access to a Triple I report until after the charge was made, it appears the GFNTF may have run a Triple I report when Anderson became a CI due to an FBI number listed on his CI form. Doc. Nos. 102-13; 84-26; 85-6. Even if a Triple I had not been done, the background check that had been done was quite comprehensive, spanning several states. Doc. Nos. 84-26; 85-6. So, it is doubtful any further background information would have been helpful.

[¶18] Furthermore, the facts stated in the warrant gave rise to probable cause. "[D]ue process …does not require a perfect investigation. Nor does due process hold the officers liable for taking seriously [a victim's] allegations." Hawkins v. Gage Cty., Neb., 759 F.3d 951, 958 (8th Cir. 2014). The Fourth Amendment does not require a every stone to be unturned in an investigation. All that that Fourth Amendment requires in this case is information sufficient to establish probable cause. "The Fourth Amendment requires a showing of probable cause before a search warrant may be

issued. Determinations of probable cause must be premised on the totality of the circumstances." United States v. Williams, 477 F.3d 554, 557 (8th Cir. 2007).

[¶19] Howe simply argues Anderson is an unreliable CI. "[T]he informant's reliability, veracity, and basis of knowledge are relevant considerations—but *not independent, essential* elements—in finding probable cause." United States v. Robertson, 39 F.3d 891, 893 (8th Cir. 1994)(emphasis added). "The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." United States v. Williams, 10 F.3d 590, 593 (8th Cir.1993). "One manner is independent corroboration of information provided by the source." United States v. Sinnawi, No. 1:19-cr-161, 2020 WL 625287, at *3 (D.N.D. Feb. 10, 2020). A background check of Anderson had been conducted. However, his basis of knowledge matched in multiple ways to what had been verified by the GFNTF. Most importantly, recordings of Howe also followed his story. Howe himself agreed the statements he made were in the Arrest Warrant Affidavit. Doc. No. 84-1. The facts in the arrest warrant affidavit give rise to probable cause that Howe committed conspiracy to commit murder.

[¶20] Even if there had been reckless disregard for the truth, the Defendants are entitled to qualified immunity. "[Q]ualified immunity is appropriate if defendant has been accused of submitting a recklessly false affidavit and if a corrected affidavit would still provide probable cause to arrest or search." Bagby, 98 F.3d at 1098. The affidavit had enough probable cause as it was. There did not need to be a corrected affidavit. Even if there had, there was certainly probable cause to arrest Howe. "In a § 1983 case an official 'is only liable for his . . . own misconduct' and is not 'accountable for the misdeeds of [his] agents' under a theory such as respondeat superior or supervisor liability." Nelson v. Corr. Med. Servs., 583 F.3d 522, 534-35 (8th Cir. 2009). "A supervisor. . . may be held liable under § 1983 if he directly participated in the constitutional

violation or if his failure to train or supervise the offending actor caused the deprivation." Tilson v. Forrest City Police Dep't, 28 F.3d 802, 806 (8th Cir. 1994). There has been no evidence or even allegations that Gilpin, as Glaze's supervisor, failed to supervise or train Glaze. Therefore, the Defendants are entitled to qualified immunity and Howe's first claim is **DISMISSED**.

## II.     WARRANT NOT SUPPORTED BY PROBABLE CAUSE

[¶21]   Howe's second cause of action is the warrant was not supported by probable cause, "violat[ing] the Fourth Amendment, and an official lack[ing] probable cause is subject to liability under 42 U.S.C. § 1983."  This claim is similar to the first claim, but is distinct. "A claim that an affiant recklessly or deliberately provided false testimony in support of an arrest warrant is distinct from a claim that the warrant was not supported by probable cause." Odom v. Kaizer, 638 F. App'x 553, 554 (8th Cir. 2016).

[¶22]   "[P]robable cause . . . . [is] ultimately [a] question of law." Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995). The absence of probable cause "will generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." Nieves, 139 S. Ct. at 1724.

> Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. The substance of all the definitions of probable cause is a reasonable ground for belief of guilt. A reasonable ground for belief means more than bare suspicion, but less than evidence which would justify condemnation or conviction. Probable cause exists where the facts and circumstances within ... the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir. 2010) (internal citations omitted).

[¶23]   Anderson's recordings and knowledge, together with the GFNTF's own independent investigation was sufficient to establish probable cause. There were reasonable grounds to believe,

which were "more than a bare suspicion," Howe committed a crime. Here, the Defendants had probable cause, which provides enough evidence that it was not the officer's animus that caused the arrest. Despite the fact the Plaintiff argues there was a "false" or misleading warrant affidavit, the factual content does not allow "the court to draw the reasonable inference that the [the Defendants are] liable for the misconduct alleged" because there was probable cause. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plaintiff needed to show a material fact was in dispute, but has failed to do so. Furthermore, the Defendants would be entitled to qualified immunity even if a violation occurred. "[O]fficers here are entitled to qualified immunity on these First and Fourth Amendment claims if [the Plaintiff's] arrest was supported by at least arguable probable cause." Johnson v. McCarver, 942 F.3d 405, 409 (8th Cir. 2019)(emphasis in original). Therefore, the Defendants are entitled to qualified immunity and Howe's second claim is **DISMISSED**.

### III. MALICIOUS PROSECUTION CLAIM

[¶24] Howe's final claim is Malicious Prosecution. For the reasons explained below, this claim is also **DISMISSED**.

#### A. Claim under 18 U.S.C. § 1983

[¶25] "Plaintiffs in retaliatory prosecution cases [must] show more than the subjective animus of an officer and a subsequent injury; plaintiffs must also prove as a threshold matter that the decision to press charges was objectively unreasonable because it was not supported by probable cause." Nieves v. Bartlett, 139 S. Ct. 1715, 1723, 204 L. Ed. 2d 1 (2019). "Malicious prosecution required the plaintiff to show that the criminal charge against him was unfounded, and that it was made without reasonable or probable cause, and that the defendant in making or instigating it was actuated by malice. It has long been settled law that malicious prosecution requires proving 'the want of probable cause'" Id. at 1726. This Court has already determined there was probable cause.

Merely saying there was no probable cause is a bare legal assertion. The other facts in the case show there was probable cause.

[¶26]    Additionally, even if there had been enough for a malicious prosecution claim, the Eighth Circuit has been clear in holding an allegation of malicious prosecution without a corresponding constitutional violation cannot sustain a civil rights claim under § 1983. See, Joseph v. Allen, 712 F.3d 1222, 1228 (8th Cir. 2013); Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2001) (stating that "malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury."); Technical Ordinance, Inc. v. United States, 244 F.3d 641, 650 (8th Cir. 2001); McNees v. City of Min. Home, 993 F.2d 1359, 1361 (8th Cir. 1993). As discussed throughout this Order, there are no claims of constitutional injuries that have merit. As such, the malicious prosecution claim cannot stand alone.

### B. State Law Claim for Malicious Prosecution

[¶27]    The Eighth has never found a malicious prosecution claim to be a Constitutional claim, saying, "[i]f malicious prosecution is a constitutional violation *at all,* it probably arises under the Fourth Amendment." Harrington v. City of Council Bluffs, Iowa, 678 F.3d 676, 679 (8th Cir.2012) (emphasis added). However, Howe cites to a Second Circuit case where a malicious prosecution claim can be established under state law. See, Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002). Even stretching state law to its end, Howe's claims still fail.

[¶28]    The North Dakota Supreme Court has previously said,

> In order to maintain an action for malicious prosecution one must establish, at a minimum, the following elements:
>
> 1. A criminal proceeding instituted or continued by the defendant against the plaintiff.
>
> 2. Termination of the proceeding in favor of the accused.
>
> 3. Absence of probable cause for the proceeding.

> 4. "Malice," or a primary purpose other than that of bringing an offender to justice.

Rodenburg L. Firm v. Sira, 2019 ND 205, ¶ 12, 931 N.W.2d 687, 690. (citing Richmond v. Haney, 480 N.W.2d 751, 755 (N.D. 1992))

[¶29] There is no dispute that criminal proceedings were instituted against Howe and the proceedings were dismissed. While a dismissal of charges is not necessarily a termination in favor of the accused, the Court will none the less analyze the final two elements. "[I]t must be stressed that although malice can be inferred from the want of probable cause in some instances, establishing malice as a matter of fact is an essential prerequisite to maintaining a claim for malicious prosecution. Thus, although the inquiry as to the existence of probable cause in some respects parallels questions of negligence, an action for malicious prosecution cannot be based on mere negligence." Richmond v. Haney, 480 N.W.2d 751, 755, n.4. (N.D. 1992). "When there has been a prior judicial determination of probable cause, such a finding usually constitutes prima facie evidence of probable cause in a subsequent malicious prosecution suit." Id. A North Dakota state court found probable cause to arrest Howe. This Court also determined there was probable cause for the warrant. Two courts have found probable cause. Therefore, malice cannot be inferred from a lack of it.

[¶30] "It is sufficient if the person instigating the prosecution as a reasonable and prudent man, ... had reasonable grounds to believe the plaintiff was guilty, and that in coming to such a conclusion ... had information of such a character and obtained from such sources as men of ordinary care, prudence, and discretion would feel authorized to act upon in similar circumstances." Id. at 756. "[T]he court decides whether or not the facts would warrant a belief of guilt in a reasonably cautious and prudent person." Id. Howe's own recorded statements, which he admits are true, could allow a prudent person to believe he had committed conspiracy to commit

murder. In this case, Howe fails to raise issues of material fact, the resolution of which would change the determination of whether or not a reasonably cautious and prudent person would believe in Howe's guilt at the time the prosecution was instigated.

[¶31] Howe largely alleges, without factual support, the Defendants hold a grudge against him. Howe alleges Whelan previously prosecuted a highly publicized case against a defendant Howe represented. Howe apparently recorded an interview with the victim, which Howe alleges angered Whelan. Doc. No. 56. Howe also asserts Gilpin and Kraft hold grudges because he successfully defended cases in which the GFNTF spearheaded investigations. This is unsubstantiated by anything other than Howe's theorizing. Howe has also failed to submit facts from which one could reasonably infer the Defendants did not truly believe he was guilty of the offense charged. Thus, under North Dakota law, Howe's claim has failed.

### C. Qualified Immunity Shields Defendants from These Claims

[¶32] The Defendants are entitled to qualified immunity. "Officials being sued under § 1983 are entitled to qualified immunity for actions that did not violate a clearly established constitutional right at the time of the alleged violation such that reasonable officials acting in the officials' position would not have understood they were violating that right." Harrington v. City of Council Bluffs, Iowa, 678 F.3d 676, 680 (8th Cir.2012) (citations omitted). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." Graham v. Barnette, 5 F.4th 872, 887 (8th Cir. 2021), reh'g denied (Aug. 20, 2021). "The plaintiff has the burden to prove that a right was clearly established at the time of the alleged violation. Boudoin v. Harsson, 962 F.3d 1034, 1040 (8th Cir. 2020) (citing Wilson v. Lamp, 901 F.3d 981, 986 (8th Cir. 2018)).

[¶33] The Eighth Circuit has never held that malicious prosecution violates the Fourth Amendment or the Fourteenth Amendment's due process clause. See Technical Ordnance, Inc. v. U.S., 244 F.3d 641, 651 (8th Cir. 2001) (explaining that law was not clearly established because the Eighth Circuit has never held that a malicious prosecution claim violated the Fourth Amendment). The Eighth Circuit has said "[i]f malicious prosecution is a constitutional violation *at all*, it probably arises under the Fourth Amendment." Harrington v. City of Council Bluffs, Iowa, 678 F.3d 676, 679 (8th Cir.2012) (emphasis added). It was not a clearly established right at the time of the alleged violation. The Fourth Amendment Malicious Prosecution claims against the Defendants are **DISMISSED**.

## CONCLUSION

[¶34] For the reasons explained above, Defendants' Motions for Summary Judgment are **GRANTED**. All claims are **DISMISSED with prejudice**.

[¶35] **IT IS SO ORDERED.**

DATED March 28, 2022.

Daniel M. Traynor, District Judge
United States District Court